**LAW OFFICES OF RAHUL WANCHOO**
Attorneys for Plaintiff
Empire State Building
350 Fifth Avenue, 59th Floor
New York, New York 10118
Phone: (646)593-8866
Fax:    (212) 618-0213
E-mail: rwanchoo@wanchoolaw.com


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X

TRANSASIA POOL PTE LTD.

                Plaintiff,

        - against -

NAMJEON INTERNATIONAL CO. LTD and
NJ SHIPPING CO. LTD.

                Defendants.

---------------------------------------------------------------X

ECF CASE

08 Civ 6435 (RJH)


**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S APPLICATION FOR AN ORDER
OF MARITIME ATTACHMENT AND GARNISHMENT
PURSUANT TO RULE B(1) OF THE SUPPLEMENTAL
RULES FOR CERTAIN ADMIRALTY AND MARITIME
<u>CLAIMS OF THE FEDERAL RULES OF CIVIL PROCEDURE</u>**


<u>**PRELIMINARY STATEMENT**</u>

      Plaintiff, TRANSASIA POOL PTE LTD. ("Plaintiff"), respectfully submit this

Memorandum of Law in support of its application for an order directing the Clerk of the Court to

issue Process of Maritime Attachment and Garnishment pursuant to Rule B(1) of the

Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure in connection with Plaintiffs' admiralty and maritime claims in the amount of $1,393,804.28 (U.S. Dollars One Million Three Hundred Ninety Three Thousand Eight Hundred Four and Cents Twenty Eight) resulting from breach of a charter party.

## STATEMENT OF FACTS

On or about February 25, 2008, a time charter party (the "Charter") was made between Plaintiff, as Charterer of the Vessel, and Defendant as disponent Owner whereby Plaintiff chartered the Vessel for the carriage of bulk cargo for a period up to minimum June 8, 2008 up to maximum July 8, 2008 in Charterer's option. The Vessel was delivered to Plaintiff at 0100 hours on February 27, 2008 at dropping last outward sea pilot Singapore. A copy of the Charter dated February 25, 2008 is annexed as Exhibit 1 to the Verified Complaint.

The Charter provided that Plaintiff shall pay for the use and hire of the Vessel at the rate of $26,250 per day pro rata payable every 15 days in advance. The Charter provided that hire was to be paid to NJ Shipping's bank account in Seoul, Korea as "beneficiary." The Charter also provided that "On Delivery all cargo holds to be completely clean/swept/washed down by fresh water and dried up and fully ready to receive any permissible cargo allowed under this charter in all respects free of salt, rust scale and previous cargo residue and should pass shipper or competent authorities inspection. <u>Otherwise vessel to be put off-hire from the time of failing until the time of passing re-inspection and any time lost/expenses incurred thereby to be for Owners account.</u>"

The Vessel arrived at Tarjun, Indonesia at 0430 hours on March 1, 2008. On arrival, an independent surveyor boarded the Vessel for inspection. After inspecting the Vessel's holds the surveyor found that the Vessel was not suitable to load grain and/or alumina cargoes and any

2

permissible cargo due to the existence of loose rust, loose scale and loose paint/peeling in all the holds. In addition, rust stain could be seen in bulkheads, hoppers and tank-top. Accordingly, the surveyor failed the Vessel's hold cleanliness inspection, but concluded that the holds were suitable for the current cargo of cement clinker.

On the basis of the survey report and pursuant to the terms of the Charter, Plaintiff placed the Vessel off hire effective March 1, 2008 at 1330 hours until such time the holds' condition had been upgraded and the Vessel had passed the hold cleanliness re-inspection.  However, Defendant denied that the Vessel was off hire claiming that the holds were suitable to load the cement clinker, but ignoring the fact that Defendant had breached the Charter by delivering the Vessel with holds that were NOT "free of salt, rust scale and previous cargo residue" and ready to receive any "permissible cargo" allowed under the Charter.

On March 6, 2008 Plaintiff advised the Defendant that either it should get the holds upgraded to meet the Charter requirements or accept full responsibility for all losses and damages that would arise should the Vessel's holds fail inspection during the period of the Charter. Plaintiff also advised Defendant that if it accepted the latter condition, Plaintiff would put the Vessel back on hire.   However, Defendant ignored Plaintiff's request and instead claimed that the Vessel was ready to load clinker and refused to carry out any hold cleaning. A second attempt by Plaintiff by an independent surveyor to inspect the Vessel was turned down by the master on March 10, 2008 and the master refused to open hatches.

Subsequent discussion between the parties failed to resolve the dispute. On March 13, 2008 following Defendant's threat to withdraw the Vessel from the service of the Plaintiff, Plaintiff agreed to load the cargo of clinker without prejudice to its rights and remedies under the Charter.  On March 17, 2008 Plaintiff paid the second hire installment to Defendant from which it deducted off hire for time lost due to the failed hold inspection at Tarjun.  On receipt of

the Charter hire, Defendant threatened to withdraw the Vessel from Plaintiff's service unless Plaintiff remitted the off hire deduction in the amount of $433,022.86 to Defendant by April 4, 2008. On April 2 Defendant also instructed the master not to berth the Vessel at Yangon to load Plaintiff's cargo. In the circumstances, Plaintiff paid Defendant under protest the off hire deduction for the failed hold inspection at Tarjun so that Defendant would instruct the master to berth the Vessel at Yangon. Plaintiff now seeks reimbursement of the hire it paid Defendant under duress on April 4 as under the terms of the Charter Plaintiff is clearly exempt from paying hire for the period of the failed hold inspection.

On or about March 27, 2008 Plaintiff entered into a back-to-back charter with Allied Maritime ("Allied") to carry a cargo of rice from Yangon to Dakar, West Africa. On or about June 5, 2008, Defendant requested Plaintiff to redeliver the Vessel at Singapore-Japan range latest by July 8, 2008. On or about June 12, 2008 Plaintiff requested Defendant for an extension of time for redelivery as it was not possible to effect redelivery by July 8 given that the voyage from West Africa to Singapore would take about 29 days and the Vessel would only complete discharge and be free of her rice cargo on or about June 15. However, Defendant refused to extend the time for redelivery of the Vessel and on or about June 18, 2008 Defendant wrongfully terminated the Charter.

As a reason of Defendant's early termination of the Charter, Plaintiff seeks reimbursement of the hire it paid to the Defendant in advance which was not earned as well as the value of the bunkers on board at the time of the forced early redelivery of the Vessel. A copy of Plaintiff's Provisional Hire Statement dated June 25, 2008 is annexed as Exhibit 2 to the Verified Complaint.

By reasons of the premises, Plaintiff has sustained damages in the amount of $985,849.78 no part of which has been paid by the Defendant.

The Charter also provided in that, if any dispute arises between the parties, the matter in dispute shall be referred to arbitration in Hong Kong with English law. In addition to the above, Plaintiff is also entitled, in Hong Kong, to attorneys' fees and other taxable costs incurred or likely to be incurred in bringing this claim, which as best as can presently be calculated are $250,000. (*See Winter Storm Shipping, Ltd. v. TPI,* 310 F.3d 263, 265 (2d Cir. 2002), where the attachment that the Court of Appeals reinstated covered "an amount that includes interest and anticipated attorneys' and arbitrators' fees.").

Arbitration of these disputes in Hong Kong arbitration may take 2 years. Plaintiff is entitled to and would receive interest at the present rate of 7.5% compounded monthly on the principal claim from June 18, 2008 to the completion of the arbitration or about $157,954.50. Plaintiff's total claim against Defendants for which it seeks security herein is $1,393,804.28 ($985,849.78 + $250,000 + $157,954.50).

Upon information and belief, Namjeon uses NJ Shipping as "paying beneficiary" or "pass through" entity such that it can insulate itself from creditors relating to its contracts.

It is not general practice in the maritime community, nor anywhere else, for independent companies to make large payments on behalf of other independent companies.

Payments sent or received on behalf of another independent company are suggestive of a relationship that is not "arms length".

Upon information and belief, NJ Shipping is not only the holding parent of Namjeon but is also the alter-ego of Namjeon because it dominates and disregards Namjeon's corporate form to the extent that NJ Shipping is carrying on Namjeon's business and operations as if the same were its own, or vice versa.

Upon information and belief, Namjeon has no separate identity from NJ Shipping.

In the further alternative, Namjeon and NJ Shipping are partners and/or joint ventures and are resident at one and the same address in Seoul.

All and singular the premises are true and within the admiralty and maritime jurisdiction of this Honorable Court.

Plaintiff brings this action by seeking an order of seizure of Defendants' goods and chattels, or credits and effects in the hands of garnishees to be named in the process, in the amount sued for herein, so that the Court shall have jurisdiction to direct Defendants to proceed with arbitration of Plaintiff's claim against Defendants and to retain jurisdiction to enter a judgment upon the arbitration award in the London arbitration.

As a result of the foregoing, Plaintiff asserts a claim in the amount of $1,393,804.28 for reimbursement of hire paid in advance, as well as value of bunkers on board at the time of forced redelivery of Vessel, attorneys' fees and costs and interest in the London arbitration, as nearly as can be estimated at present.

## ARGUMENT

## POINT I

### AN ORDER AUTHORIZING THE ISSUANCE OF PROCESS OF MARITIME ATTACHMENT SHOULD BE GRANTED PURSUANT TO SUPPLEMENTAL RULES B (1) TO ALLOW ATTACHMENT OF DEFENDANTS' ASSETS IN THE HANDS OF NON-PARTIES TO THIS ACTION

Rule B (1) of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure ("Supplemental Rule B (1)"), specifically permits prejudgment attachment in admiralty or maritime cases whenever the defendant cannot be "found" with the district:

> With respect to any admiralty or maritime claim *in personam* a
> verified complaint may contain a prayer for process to attach the

6

>defendant's good and chattels, or credits and effects in the hands of garnishees to be named in the process to the amount sued for, if the defendant shall not be found within the district.  Such a complaint shall be accompanied by an affidavit signed by the plaintiff or plaintiff's attorney that, to the affiant's knowledge, or to the best of the affiant's information and belief, the defendant cannot be found within the district.  The verified complaint and affidavit shall be reviewed by the court and, if the conditions set forth in this rule appear to exist, an order so stating and authorizing process of attachment and garnishment shall issue.

Plaintiff's claim arises under a charter party which is a maritime contract and, therefore, is a claim within the admiralty jurisdiction of this Court.  G. Gilmore & C. Black, The Law of Admiralty 22, n. 65 (2d ed. 1975); 1 Benedict On Admiralty § 184 at 12-11 (7th rev. ed. 2002). Because Plaintiff possesses a maritime claim, it may secure a maritime attachment pursuant to Supplemental Rule B (1) against all assets and property (up to the amount of the claim) belonging to Defendant which may be situated within the district "if the defendant(s) shall not be found within the district".  Supplemental Rule B (1).

For purposes of Supplemental Rule B(1), the term "found within the district" presents a two-pronged inquiry.  If the defendants cannot be found within the district for jurisdictional purposes and for service of process, an attachment is permissible.  See Seawind Compania, S.A. v. Crescent Line, Inc., 320 F.2d 580, 582 (2d Cir. 1963); see also 29 Moore's Federal Practice § 705.02 [2][b] (Matthew Bender 3d ed.).  As explained in the accompanying Affidavit of Rahul Wanchoo, Defendants cannot be found within this District Court under this analysis. Accordingly, the issuance of an order of maritime attachment is proper.

Rule B attachment is also proper in aid of foreign litigation or arbitration. Polar Shipping Ltd. v. Oriental Shipping Corp., 680 F.2d. 627, 632 (9th Cir. 1982); Staronset Shipping Ltd. v. North Star Navigation Inc., 659 F. Supp. 189, 191 (S.D.N.Y. 1987); Andros Compania Maritima,S.A. v. Andre and Cie, S.A., 430 F. Supp. 88 (S.D.N.Y. 1977).  See also Drys Shipping

Corp. v. Freight of the M.S. DRYS, 558 F.2d 1050 (2ds Cir. 1977).  Maritime attachment and garnishment is available not only against an account maintained by a defendant in New York, but also against any correspondent bank which is used to transfer funds of a defendant's in or out of New York.  Winter Storm Shipping Ltd. v. TPI, 310 F.3d 263 (2d Cir. 2002).

## POINT II

### AN ORDER AUTHORIZING THE ISSUANCE OF PROCESS OF MARITIME ATTACHMENT SHOULD IN ADDITION TO PLAINTIFF'S PRINCIPAL CLAIM ALSO INCLUDE INTEREST, COSTS AND ATTORNEYS' FEES

Plaintiff seeks to attach Defendants' assets in the hands of non-parties.  In order to attach Defendants' assets in the hands of non-parties, an order of attachment and garnishment is required.  An Order authorizing the issue of maritime attachment is based not only on the principal amount of the claim but also for interest, attorneys' fees and other taxable costs incurred or likely to be incurred in bringing this claim in London against the Defendant. See, e.g., Consub Delaware LLC v. Schahin Engenharia Limitada, 476 F.Supp.2d 305 (S.D.N.Y. 2007), Sonito Shipping Company Ltd. v. Sun United Maritime Ltd., 478 F.Supp.2d 532 (S.D.N.Y. 2007), and T&O Shipping Ltd. v. Lydia Shipping Co. S.A., 415 F.Supp.2d 310 (S.D.N.Y. 2006). Plaintiff therefore requests that the Court issue an order authorizing process of maritime attachment and garnishment in order to secure Plaintiff's claims against Defendants in the London arbitration in the amount of $1,393,804.28 (U.S. Dollars One Million Three Hundred Ninety Three Thousand Eight Hundred Four and Cents Twenty Eight), as nearly as can be estimated at present.

## CONCLUSION

By reason of the foregoing, it is respectfully submitted this Court should issue an Order authorizing the issuance of Process of Maritime Attachment and Garnishment pursuant to

Supplemental Rule B(1) and Plaintiff should have such other and further relief as is just and proper in the circumstances.

Dated: New York, New York
      July 17, 2008

                                Respectfully submitted,

                                **LAW OFFICES OF RAHUL WANCHOO**
                                Attorneys for Plaintiff
                                TRANSASIA POOL PTE LTD.

                                By: _____/s/_____
                                      Rahul Wanchoo (RW-8725)